IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ISAAC POLLARD, LISA POLLARD,
AND RONNIE POLLARD                                                                                   PLAINTIFFS

V.                                                                              CIVIL ACTION NO. 3:19-cv-182-NBB-JMV

DESOTO COUNTY, TIM FLETCHER,
THOMAS CAMPBELL, BRANDON PERKINS,
JONATHAN HENDRIX, JASON CLINGAN,
BRIAN KELLER, JOHN COLEMAN, AND
BRETT WILLIAMS                                                                                        DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court upon the defendants' motion for summary judgment and qualified immunity. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

### Factual Background and Procedural Posture

On August 20, 2016, plaintiff Isaac Pollard, a 27-year-old male, was briefly stopped by DeSoto County Sheriff Deputies in his neighborhood in Olive Branch, Mississippi, around midnight while driving a white Dodge pickup truck. The officers questioned Pollard because his truck met the description of one seen in the neighborhood earlier the same night by a neighbor whose car had been burglarized. The same neighbors had also reported seeing a suspect on foot who fit Pollard's description and the clothing he was wearing. Pollard informed the officers that he had been in the neighborhood, allegedly running between the hours of 10:00 p.m. and midnight before then getting into his truck and driving back through the neighborhood to map his run. The neighborhood where the plaintiffs live had been experiencing increased criminal activity, including car break-ins and items being stolen from garages and carports. The sheriff's department was therefore on high alert with a heightened presence in the area during this time.

After receiving additional information from a separate witness in the neighborhood that a suspect on foot had been seen walking on the street outside the plaintiffs' residence and then immediately getting into and leaving in a white Dodge pickup truck parked in the Pollards' driveway, defendants Officers Brandon Perkins and Jonathan Hendrix traveled to the plaintiffs' residence, knocked on the door, and Isaac Pollard answered the door. The officers advised Pollard that they were there to inquire further about the route he had just run. Pollard asked the officer if he could retrieve an item from his bedroom before speaking with them and falsely informed the officers that he was at home alone. In fact, his parents, plaintiffs Lisa and Ronnie Pollard were in the home asleep.

Because Isaac Pollard was a potential suspect in a burglary, standard police practice requires that such an individual not be allowed to return inside of a house alone for the risk that he could flee or retrieve a weapon; thus, the officers advised Pollard that he could retrieve the item so long as he had no objection to being accompanied by an officer. Pollard agreed, and he and Officer Perkins entered the house and walked into Pollard's bedroom to obtain the item which turned out to be Pollard's cellphone. Officer Perkins and Pollard were inside the home for less than one minute before returning outside.

At some point, defendant Officer Thomas Campbell arrived at the house and sat down with Pollard on the back of his truck to speak with him. Pollard advised Campbell that he had left his home and gone for a run about 10:20 p.m., arriving back home around 11:40 p.m., where he stayed for a while before leaving again in his white Dodge pickup truck around 12:20 a.m. to map his run. This information directly conflicted with that provided by the witness who had seen Pollard on foot in the neighborhood and then immediately entering the truck in the Pollards' driveway and leaving. Officer Campbell noted this discrepancy in Pollard's timeline and pointed

2

out that fact to Pollard who allegedly became quiet and then later yelled, "I didn't steal anything!" Pollard apparently became visibly upset, and Officer Campbell attempted to calm him down.

While being questioned, Pollard managed to make a phone call to his mother, and Ronnie and Lisa Pollard came outside almost immediately. The plaintiffs note that Isaac was in handcuffs with his hands behind his back. Ronnie Pollard informed Officer Campbell that Isaac is autistic and asked him to remove the handcuffs. Campbell refused, stating that Isaac had raised his voice to the officers. According to the plaintiffs, Campbell continued to question Isaac for twenty or thirty minutes while Isaac remained in handcuffs. Isaac allegedly complained that his wrists were hurting, and he received many mosquito bites. Campbell's incident report describes Isaac as becoming upset and frightened. Isaac was never arrested, only briefly detained.

On August 16, 2019, the plaintiffs filed the present action pursuant to 42 U.S.C. § 1983, asserting claims for unreasonable seizure of Isaac Pollard and unlawful entry into his home, for a traffic stop lacking probable cause, for interrogation and detention in handcuffs which was an excessive use of force, and for racial profiling depriving Pollard of equal protection, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The plaintiffs also asserted a claim under § 1983 against DeSoto County, Mississippi, for failure to train and supervise.

The defendants subsequently moved for summary judgment and qualified immunity. The plaintiffs responded to the motion, and, based on the issues that were not contested by the plaintiffs in their response, a stipulation of dismissal with prejudice was thereafter entered with the court, dismissing defendants DeSoto County, Tim Fletcher, Jason Clingan, Brian Keller,

John Coleman, and Brett Williams. The plaintiffs also conceded the following claims: (1) that the traffic stop involving Isaac Pollard lacked probable cause or otherwise violated Pollard's Fourth and Fourteenth Amendment rights; (2) that the detention of Isaac Pollard was based upon racial profiling, depriving him of equal protection and violating his Fourth and Fourteenth Amendment rights; and (3) that DeSoto County failed to train or supervise in violation of Pollard's constitutional rights, and such failure represented a policy or custom of DeSoto County.

As a consequence of the parties' stipulation of dismissal, the issues and parties have been greatly narrowed. The remaining parties are the officers who were actually present and involved in the incident: defendants Brandon Perkins, Jonathan Hendrix, and Thomas Campbell. The remaining issues are: (1) plaintiff Isaac Pollard's Fourth Amendment claim concerning the detention at his home; (2) plaintiffs Lisa and Ronnie Pollard's Fourth Amendment claim as it relates to the defendants' brief entry into their home; and (3) Isaac Pollard's excessive force claim.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## Analysis

The court notes as an initial matter that the facts in this case do not appear to be in much dispute, as the plaintiffs largely relied on the affidavit testimony supplied by the defendants. Other than small additions to the overall story, the plaintiffs did not direct the court to any proof of material facts in dispute regarding the detention of Isaac Pollard at his home and the events surrounding the detention.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council-President Gov't*,

5

279 F.3d 273, 284 (5th Cir. 2002). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in the light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).

The constitutional infringement of false arrest and unreasonable seizure requires a showing of the absence of probable cause. *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988). Though the plaintiff here was not even arrested, an arrest must be based on probable cause which exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Spiller v. City of Texas City Police Dep't*, 130 F.3d 162, 165 (5th Cir. 1997). Police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Again, the defendants did not arrest Isaac Pollard. Officers may detain a person if the officers have a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop … [but] the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." *Id.* Reasonable suspicion is shown if the officer can point to "specific and articulable facts which, taken together with

6

rational inferences from those facts, reasonably warrant" the police intrusion into the suspect's constitutionally protected interests. *Terry*, 392 U.S. at 21.

Here, the officers relied on three separate witness reports from the Pollards' neighbors, including the sighting of a man on foot who matched Isaac Pollard's general description and clothing and the sighting of a vehicle in the area of a reported crime matching the description of Pollard's truck. Coupled with Pollard's admission that he was out on foot, the traffic stop while Pollard was driving his truck in the area, and Pollard's statement to the officers that he had been home for nearly forty minutes after his run before leaving again in his truck, which was directly contradicted by a witness report, the basis for reasonable suspicion and even probable cause was clearly established. Accordingly, the court finds that the defendant officers are entitled to qualified immunity as to Isaac Pollard's Fourth Amendment claim regarding his detention and questioning at home, and the claim should be dismissed.

As to the Pollards' claim regarding the officers' brief entry into their home, the court finds the existence of exigent circumstances that shield the defendants from liability for this action. Under exigent circumstances, even a warrantless search does not violate the Fourth Amendment, so long as the scope of the search is no broader than necessary to deal with the exigency. *Warden v. Hayden*, 387 U.S. 294, 299 (1967). Immediate safety risks to police officers and others are exigent circumstances which may excuse a warrantless entry into a residence. *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).

In the present case, the defendant officers traveled to the plaintiffs' home to obtain additional information in an ongoing investigation. They did not travel there for the purpose of entering the home or searching it. Only because Isaac Pollard requested to obtain an item from his bedroom did the officers enter at all, and for reasonable safety reasons, the officers did not

7

believe it was appropriate to allow Pollard to enter the home alone at that moment. The court finds that the defendant officers' actions in briefly entering the home were objectively reasonable. They are entitled to qualified immunity on this claim, and the claim should be dismissed.

In support of the plaintiffs' remaining claim, the use of excessive force, the plaintiffs argue that Isaac complained to the officers that the handcuffs were hurting his wrists and that he suffered from mosquito bites. The court notes that no medical records have been produced related to the treatment of any injury suffered as a result of the handcuffing. The Fifth Circuit has held "that handcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

The plaintiffs allege that Isaac, who is autistic, suffered from emotional distress. The Fifth Circuit has held "[t]here can be a constitutional violation only if significant injuries resulted from the officer's use of excessive force," and "[i]njuries which result from, for example, an officer's justified use of force … do not implicate constitutionally protected interests." *Johnson v. Morel*, 878 F.2d 477, 479 (5th Cir. 1989). The *Johnson* court further noted that "[a]n arrest is inevitably an unpleasant experience, [and] [a]n officer's use of excessive force does not give constitutional import to injuries that would have occurred absent the excessiveness of the force, or to minor harms. Nor can transient distress constitute a significant injury." *Id.* at 479-80.

Here, the plaintiffs claim that Isaac Pollard was diagnosed with post-traumatic stress disorder attributable to the incident, but this is precisely the situation contemplated by the Fifth Circuit in *Johnson*. A constitutional violation is not attributable to injuries from the overall incident as a whole or injuries that would have occurred absent the excessive use of force. The injuries must be linked to the actual excessive force claimed. Here, no excessive force has even

been claimed because the Fifth Circuit has held that handcuffing too tightly, without more, does not amount to excessive force. For these reasons, the court finds that the officers are entitled to qualified immunity on Pollard's excessive force claim, and the claim should be dismissed.

Conclusion

For the foregoing reasons, the court finds that the defendants' motion for summary judgment and qualified immunity is well taken and should be granted. A separate order in accordance with this opinion will issue this day.

This 27th day of September, 2021.

>/s/ Neal Biggers
> NEAL B. BIGGERS, JR.
> UNITED STATES DISTRICT JUDGE